UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

_____

| | |
|---|---|
| HENRY GARCIA,<br><br>    Plaintiff,<br><br>v.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC., TIM MORGAN, Warden, JANA MARJENHOFF, M.D., JAY PETERSON, CNP, JOHN DOE CORPORATIONS 1–3, and JOHN DOES 1–9,<br><br>    Defendants. | No. 1:14-CV-00268-BRB-LAM |

_____

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**
_____

    Defendants Corrections Corporation of America, Inc. (CCA), Tim Morgan, Jana Marjenhoff, and Jay Peterson (collectively Defendants) move to dismiss Plaintiff Henry Garcia's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff is a former federal pre-trial detainee who was held at Torrance County Detention Facility (TCDF)—a local jail in Estancia, New Mexico, that gets its authority from the state of New Mexico—pursuant to a contract between TCDF and the United States Marshals Service. He alleges he sustained an injury while detained there in 2013 and claims Defendants are responsible for his injury as a result of their illegal actions. Of the five total claims Plaintiff brings, the two that are most relevant to this

1

current motion, Counts III and IV, assert claims under 42 U.S.C. § 1983 against Defendant Peterson and Marjenhoff, respectively, for violating Plaintiff's right to humane conditions of confinement and adequate medical care under the Eighth and Fourteenth Amendments. Both of these individuals were employees of CCA—the private, for-profit corporation that operates TCDF pursuant to a contract it has with Torrance County—who worked in TCDF's medical facility when Plaintiff was held there.

Defendants argue that it was improper for Plaintiff to assert Counts III and IV under § 1983 because Defendants Peterson and Marjenhoff were acting under the color of *federal* law, not state law. They contend that Plaintiff should have instead brought these claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), a case that created a federal equivalent to § 1983. Without foreclosing this argument in subsequent proceedings, the Court denies Defendants' Motion to Dismiss in its entirety for the following reasons.

I.

The facts Plaintiff alleges in his complaint are fairly straightforward and as follows: Plaintiff was in the custody of the United States Marshals Service and was housed at TCDF while awaiting his federal trial. In early October 2013, Defendant Morgan ordered Plaintiff to remove dead leaves, weeds, and other debris from beneath the razor wire that surrounds TCDF as part of his work detail. While reaching under the razor wire, the razor wire slipped and cut into Plaintiff's left forearm. Plaintiff immediately went to the medical facility at TCDF to receive treatment for his injury.

Plaintiff informed Defendant Peterson, a Certified Nurse Practitioner working in

2

the medical facility, that he could not move the middle two fingers of his left hand. Defendant Peterson instructed a nurse to clean the wound, apply bandages to it, and give Plaintiff a tetanus shot, but did nothing further. Several days passed, and Plaintiff went back to Defendant Peterson asking to see a doctor because he still could not move his fingers. Defendant Peterson denied this request.

Plaintiff therefore filed a grievance wherein he formally asked to see a doctor, but he was told he merely had a "muscle injury" that required no further medical treatment. His request was denied. About two months after incurring his injury, however, Plaintiff finally saw Defendant Marjenhoff, a doctor working for CCA to treat the inmates at TCDF. After hearing his complaints, Defendant Marjenhoff arranged for Plaintiff to meet with an orthopedic surgeon in Santa Fe. The orthopedic surgeon concluded that the tendons in Plaintiff's left forearm were severed. He also told Plaintiff that he could no longer reattach the tendons because so much time had passed since he had received his injury.

Plaintiff returned to TCDF with instructions from the orthopedic surgeon to schedule a follow-up appointment with him. Soon afterwards, however, Plaintiff was transferred from TCDF to a new correctional facility, a maneuver that Plaintiff alleges was done intentionally to delay his treatment. But after realizing Plaintiff needed to continue his treatment, the United States Marshalls Service returned Plaintiff to TCDF. Plaintiff contends that Defendants continued to deny him treatment even after his return.

II.

Defendants argue that this Court should dismiss Counts III and IV—the claims

against Defendant Peterson and Defendant Marjenhoff—under Rule 12(b)(6) because Plaintiff inappropriately brought these claims under § 1983.  In general, § 1983 "provides that [every] person who acts under color of state law to deprive another of constitutional rights shall be liable in a suit for damages."  *Moss v. Kopp*, 559 F.3d 1155, 1162 (10th Cir. 2009) (alteration in original) (quoting *Tower v. Glover*, 467 U.S. 914, 919 (1984)) (internal quotation marks omitted); *see also* 42 U.S.C. § 1983.  Defendants, however, contend that Peterson and Marjenhoff were not acting under the color of *state* law but were acting under the color of *federal* law.  For this reason, they maintain that Plaintiff should have brought a *Bivens* action instead.  *See Malesko*, 534 U.S. at 66 ("In *Bivens* . . . we recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."); *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) ("[A] *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.").

    The Supreme Court has noted that "acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  This general rule, however, came from a case that set out to determine whether certain private entities could act under the color of state law.  *Id.* 47–48.  The concern focused on the line between private conduct and governmental conduct under § 1983, *not* on the line between state conduct and federal conduct.  *See id.* 47–50.  And to the latter, the Supreme Court and the Tenth Circuit to this day have offered only minimal

4

guidance as to where courts should demarcate this line. *See*, *e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) (noting in dicta that custodians of federal prisoners "are not acting under color of state law and hence cannot be sued under § 1983"); *Romero v. Peterson*, 930 F.2d 1502, 1503–05 (10th Cir. 1991) (determining whether police officers were acting under the color of *tribal* law or federal law pursuant to an arrest).

For this reason, it is not clear whether "suits brought by a federal inmate against employees at a local correctional facility housing federal prisoners pursuant to contract with the federal government should be brought under *Bivens* . . . or 42 U.S.C. § 1983." *Dushane v. Sacramento Cnty. Jail*, No. 2:13–cv–2518 EFB P, 2014 WL 3867468, at *2 (E.D. Cal. Aug. 6, 2014); *see also Lewis v. Downey*, 581 F.3d 467, 471 n.3 (7th Cir. 2009) (observing this same lack of clarity). But Plaintiff's case offers an additional element that complicates this inquiry even further: he brings in a *third* entity by suing the employees of a private corporation (CCA) that is under contract with a local municipality (Torrance County) to operate the municipality's local jail (TCDF), and the local jail in turn is under contract with a federal agency (the United States Marshals Service) to house federal prisoners. Thus, in one sense, CCA and its employees were arguably acting under the color of state law because their authority to house *prisoners in general* comes from Torrance County and TCDF, a local jail that gets its authority from the state of New Mexico. But on the other hand, CCA and its employees were arguably acting under the color of federal law because TCDF only gets its authority to house *federal prisoners* from the United States Marshals Service, a federal agency that gets its authority from the

5

United States.

Both Plaintiff and Defendants bring up provisions in the Intergovernmental Service Agreement (ISA) between TCDF and the United States Marshals Service—the contract between the two that allows TCDF to hold federal prisoners—to argue how the Court should rule on this issue. But because this is a motion to dismiss, the Court cannot look outside the pleadings when ruling on this motion without turning it into a motion for summary judgment.[1] Fed. R. Civ. P. 12(d). The Court believes this would not be appropriate at this stage in the litigation because in discovery the parties may unearth even more evidence beyond the ISA, such as the contract between CCA and Torrance County, that could indicate whether CCA and its employees were acting under the color of state or federal law. The Court thus denies Defendants' Motion to Dismiss as to Counts III and IV without precluding Defendants from bringing this same argument again

---

[1] Defendants contend that the Court can consider the ISA because "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). Plaintiff, however, did not refer to the ISA in his complaint. He alleged only that "[o]n information and belief, CCA operates [TCDF] . . . under contract with Torrance County, New Mexico." Compl. ¶ 7, ECF No. 1. He therefore only referred to the contract between CCA and TCDF, *not* to the contract between TCDF and the United States Marshals Service. Furthermore, even though Plaintiff himself alludes to the ISA, he is not sold on its authenticity. He acknowledges that he "does not have the ability at this point in the case to authenticate the ISA and its modifications" and asks "at a minimum [that] Defendants' motion to dismiss be denied pending discovery to authenticate the ISA and modifications that are applicable in this case, as well as other relevant documents such as CCA's contract with Torrance County." Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 3, 7, ECF No. 22. Plaintiff's hesitancy is sufficient to qualify as a "dispute" of the ISA's authenticity.

at a later stage in the litigation.[2]

### III.

For the reasons set forth above, the Court **DENIES** Defendants' Motion to

---

[2] Defendants also bring a host of other arguments in their Motion to Dismiss, including that (1) Plaintiff should not be "permitted to amend his Complaint to assert Counts III and IV under *Bivens*" because the Supreme Court's decisions in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), and *Minneci v. Pollard*, 132 S. Ct. 617 (2012), mandate that he cannot bring *Bivens* claims against employees of a private prison corporation, i.e., Defendants Peterson and Marjenhoff, Defs.' Mot. to Dismiss 6, ECF No. 10; (2) Counts I, II, and V—Plaintiff's state-law claims—should be dismissed because they are only before this Court on supplemental jurisdiction to Plaintiff's federal claims; and (3) the John Doe Defendants in this case—John Doe Corporations 1–3 and John Does 1–9—should be dismissed because "[n]o federal statute or rule specifically allows the naming of fictitious parties in a lawsuit," Defs.' Mot. to Dismiss 10, ECF No. 10. Given the Court's decision to deny Defendant's Motion to Dismiss as to Counts III and IV, the Court need not address Defendants' arguments that Plaintiff should not be allowed to amend his complaint and that Counts I, II, and V should be dismissed.

Defendants' remaining argument that Plaintiff could not name John Doe defendants is without merit. Although they are correct that no federal statute *specifically* allows the naming of fictitious parties in a lawsuit, other statutes heavily imply that such an action is allowed. *See, e.g.*, 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, *the citizenship of defendants sued under fictitious names shall be disregarded*." (emphasis added)). None of the cases Defendants proffer in support of their argument that John Doe defendants are not allowed sufficiently dispute this conclusion. *See Watson v. Unipress, Inc.*, 733 F.2d 1386, 1386–87 (10th Cir. 1984) (ruling that an unnamed defendant must be dismissed only because the statute of limitations had run and the plaintiff's eventual identification of this unnamed defendant did not relate back to the date of the original complaint); *Coe v. U.S. Dist. Court for Dist. of Colo.*, 676 F.2d 411, 412, 415 (10th Cir. 1982) (determining whether a *plaintiff* could file a complaint in federal court under a pseudonym); *Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012) (unpublished) (noting that the magistrate judge had ruled the "Federal Rules of Civil Procedure d[o] not permit . . . actions against unnamed defendants" only because a suitable length of time had passed for the plaintiff to discover their true identities). Because there is nothing inherently improper about Plaintiff naming John Doe defendants and then amending his complaint later on once he discovers their true identities, the Court denies Defendants' contention that the John Does defendants should be dismissed for no other reason than the fact that they are called "John Does."

Dismiss in its entirety.  The Court also notes that Plaintiff has voluntarily dismissed John Doe Corporations 1–3 without prejudice pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(i) and 41(a)(1)(B).  Defendants must serve their answers in accordance with the time limits set out in Federal Rule of Civil Procedure 12(a)(4)(A).  The Court refers this matter to the magistrate judge for scheduling.

      SO ORDERED.

      Entered for the Court
this 8th day of March, 2016.


Bobby R. Baldock
United States Circuit Judge
Sitting By Designation